# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

CHAMBERS OF
CHARLES D. AUSTIN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
MDD_CDAChambers@mdd.uscourts.gov

September 4, 2026

LETTER TO ALL COUNSEL OF RECORD

Re: *Josh C. v. Frank Bisignano, Commissioner, Social Security Administration*
Civil No. 25-1677-CDA

Dear Counsel:

On May 27, 2025, Plaintiff Josh C. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2025). I have considered the record in this case (ECF 8) and the parties' briefs (ECFs 12, 15 and 16). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will DENY both motions, REVERSE the Commissioner's decision, and REMAND the case to the Commissioner for further consideration. This letter explains why.

## I. PROCEDURAL BACKGROUND

Plaintiff filed a Title II application for Supplemental Security Income ("SSI") benefits on July 16, 2019, alleging a disability onset of July 16, 2019. Tr. 2301. Plaintiff's claims were denied on October 14, 2022, but this Court remanded the case for further proceedings on July 8, 2024. Tr. 2301. On February 26, 2025, an Administrative Law Judge ("ALJ") held a hearing. Tr. 2301. Following the hearing, on March 24, 2025, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[1] during the relevant time frame. Tr. 2298. The Appeals Council denied Plaintiff's request for review, Tr. 2298, so the ALJ's decision constitutes the final, reviewable decision of the SSA, *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II. THE ALJ'S DECISION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

---

[1] 42 U.S.C. §§ 301 et seq.

of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ must evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since July 16, 2019." Tr. 2304. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "chronic pain disorder; cervical and lumbar degenerative disc disease; neuropathy; post-traumatic stress disorder; depressive disorder; affective disorder and anxiety disorder." *Id.* The ALJ also determined that Plaintiff suffered from the non-severe impairments of "insomnia, hypertension, myopia, stab wound, and substance abuse." *Id.* At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 2305. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 416.967(b) except can lift, carry, push and pull 20 lbs. occasionally and 10 lbs. frequently; can sit for six hours in an eight-hour workday, and stand and walk for six hours in an eight-hour workday; can bilaterally, frequently operate hand controls; can bilaterally, occasionally reach overhead, but frequently reach in all other directions; can only frequently balance and kneel; can only occasionally climb ramps and stairs, stoop, or crouch; can never climb ladders, ropes, or scaffolds, or crawl; can never be exposed to moving, mechanical parts and unprotected heights; can only occasionally be exposed to extreme cold and vibration; can understand, remember, and carry out simple instructions; can perform tasks that do not involve a specific production rate pace, such as assembly line work or an hourly production quota; can have occasional interaction with the public and co-workers and supervisors; and can deal with occasional changes in a routine work setting.

Tr. 2309-2310. The ALJ determined that Plaintiff has no past relevant work but could perform other jobs such as a Marker (DOT[2] #209.587-034, Router (DOT #222.587-038), and Shipping and

---

[2] The "DOT" is the Dictionary of Occupational Titles. "The *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

receiving weigher (DOT #222.387-074) that existed in significant numbers in the national economy. Tr. 2318-9. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 30.

## III. LEGAL STANDARD

The Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review considers only whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

## IV. ANALYSIS

Plaintiff raises two arguments on appeal: first, that the ALJ's use of the term "specific production-rate pace" in their hypothetical to the vocational expert renders the Plaintiff's RFC unreviewable, and, second, that the RFC lacks a narrative explanation. ECF 12, at 8. Defendant counters that the ALJ adequately explained the "specific production-rate pace," and substantial evidence supports the ALJ's evaluation of Plaintiff's RFC. ECF 15, at 5.

When a claimant possesses a mental impairment, an ALJ must make "'a specific finding as to the degree of limitation in each of' the four areas of functional limitation" set forth at 20 C.F.R. §§ 404.1520a(c)(3) and 416.920a(c)(3). *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017) (quoting 20 C.F.R. § 404.1520a(e)(4)). One of these four areas—concentration, persistence, and pace ("CPP")—concerns "the abilities to focus attention on activities and stay on task age-appropriately." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(E)(3). A "moderate" limitation in CPP means that a claimant's ability to sustain CPP "independently, appropriately, effectively, and on a sustained basis is fair." *Id.* § 12.00(F)(2)(c). "[O]nce an ALJ has made a . . . finding that a claimant suffers from moderate difficulties in [CPP], the ALJ must either include a corresponding limitation in [their] RFC assessment, or explain why no such limitation is necessary." *Talmo v. Comm'r, Soc. Sec. Admin*, No. ELH-14-2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015) (citing *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015)), *report and recommendation adopted*, (D. Md. June 5, 2015). An ALJ may not account for a claimant's moderate CPP limitations by restricting the RFC to simple, routine tasks or unskilled work without explaining why such provisions adequately address the claimant's CPP limitations. *See Mascio*, 780 F.3d at 638; *Shinaberry v. Saul*, 952 F.3d 113, 121–22 (4th Cir. 2020). Nor may an ALJ accommodate a claimant's moderate CPP limitations by restricting the claimant to "work[ing] in two-hour increments with normal breaks," as such breaks are "customary even for those without limitations." *Caitrin M. v. Kijakazi*, No. BAH-22-2785, 2023 WL 5300318, at *4

(D. Md. Aug. 17, 2023) (collecting cases). However, an ALJ may accommodate a claimant's moderate CPP limitations by assigning persuasive value to a medical opinion that "provide[s] substantial support for" the ALJ's CPP-related RFC provisions. *Sizemore v. Berryhill*, 878 F.3d 72, 81 (4th Cir. 2017).

At step three, the ALJ found a moderate limitation regarding CPP. Tr. 2308. The ALJ noted that Plaintiff "has generally demonstrated intact recent and remote memory skills during mental status examinations" and "has also generally exhibited intact concentration and attention during mental status examinations." *Id.* Moreover, "there does not appear to be any neuropsychiatric testing showing that [Plaintiff] had a significant cognitive or intellectual impairment." *Id.* The ALJ further observed that Plaintiff "reported he is able to do his own laundry [and] prepare his own meals. . . activities [which] require [Plaintiff] to be able to follow simple instructions." *Id.* Last, the ALJ noted that "[Plaintiff] is able to use public transportation, which would require him to be able to pay attention to his surroundings[, and Plaintiff] could count change, which would require him to be able to maintain the concentration necessary to perform the required calculations." *Id.* The ALJ concluded that "[Plaintiff] has a mild limitation inn [sic] his ability to concentrate, persist, and maintain pace." This conclusion contradicted the initial observation that Plaintiff has a moderate limitation. *Id.*

Subsequently, without explaining their inconsistent conclusions at step three, the ALJ determined that Plaintiff "can perform tasks that do not involve a specific production rate pace, such as assembly line work or an hourly production quota[.]" Tr. 2310. The ALJ did not state that these provisions were intended to accommodate Plaintiff's CPP limitations. Even assuming that they were, the ALJ did not resolve whether Plaintiff has a moderate or mild CPP limitation, nor how the restrictions in the RFC were intended to address any limitations.

The Court agrees with Plaintiff that this lack of explanation warrants remand. A claimant's RFC represents "the most [she] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). Social Security Ruling ("SSR") 96-8P details the steps an ALJ must take when assessing a claimant's RFC. See generally SSR 96-8P, 1996 WL 374184 (S.S.A. July 2, 1996). The Ruling provides that "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at *7. Here, the ALJ did not provide a narrative discussion to support the RFC's production-pace restriction.

In disagreement, Defendant points to, among other things, the ALJ's summary of Plaintiff's physical and mental impairments, subjective complaints, and daily activities paired with explanations as to why Plaintiff's statements were inconsistent with the evidence of record and not as severe as alleged. ECF 15, at 8. Defendant argues that these are evidence that the ALJ sufficiently explained their decision to restrict Plaintiff from specific production pace work. *Id.* To be sure, this evidence *may* support conclusions that Plaintiff's CPP limitations can be effectively accommodated by restrictions from "specific production rate pace" work. But SSR 96-8P does not merely require an ALJ to provide a discussion containing evidence that supports the ALJ's conclusions; the ALJ must "describ[e] how the evidence supports each" of their conclusions. SSR 96-8P, 1996 WL 374184, at *7 (emphasis added). By failing to specifically

address how the evidence supports these RFC provisions and contradicting their own CPP conclusion, the ALJ contravened SSR 96-8P. Thus, the Court finds Defendant's contentions unpersuasive and inconsistent with the law and record.

Having determined that the ALJ erred in assessing the RFC, the Court must consider whether the error warrants remand. Ordinarily, remand of an SSA decision for legal error is unwarranted unless a plaintiff shows that the error was harmful. *See Josiah T. v. Comm'r, Soc. Sec. Admin.*, No. SAG-20-3572, 2022 WL 684944, at *2 (D. Md. Mar. 8, 2022) (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)). Plaintiff does not explain how harmful error resulted from the ALJ's failure to provide a basis for the assembly-line and production-pace provisions at issue in this case. *See generally* ECF 11. Nevertheless, remand is appropriate where "inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio*, 780 F.3d at 636 (citation omitted). So it is here. Given the lack of a narrative discussion and the lack of any record evidence that might shed light on the appropriateness of a production-pace or assembly-line restriction, the Court is "left to guess" about how the ALJ determined that these restrictions could accommodate Plaintiff's moderate or mild—an unresolved inconsistency—CPP limitations. *Id.* at 637. Indeed, the ALJ's lack of explanation leaves the Court unable to determine whether these provisions were even intended to accommodate Plaintiff's CPP limitations, let alone how they might accommodate a mild limitation versus a moderate one. For these reasons, remand is necessary. *Mascio*, 780 F.3d at 636

Having remanded the case on other grounds, I need not address Plaintiff's other argument. On remand, the ALJ is welcome to consider the argument and make any required adjustments to the opinion. Additionally, in remanding for further explanation, the Court expresses no opinion as to whether the ALJ's conclusion that Plaintiff is not entitled to benefits is correct.

## V. **CONCLUSION**

For the reasons set forth herein, Plaintiff's motion for summary judgment, ECF 12, is DENIED and Defendant's motion for summary judgment, ECF 15, is DENIED and Plaintiff's alternative motion for remand, ECF 12, is GRANTED. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Charles D. Austin
United States Magistrate Judge